Filed 8/4/26; see fn. 1 about a separate "on the merits" nonpub opinion

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| A COMPANY HUNGARY KFT,<br><br>    Plaintiff and Appellant,<br><br><br>    v.<br><br><br>SERGEI BESPALOV et al.,<br><br><br>    Defendants and Appellants. | B336640a<br><br><br>(Los Angeles County<br>  Super. Ct. No. 20STCV00175) |

        Order to show cause re. sanctions.  Sanctions imposed.

        Eisner, Jeremiah Reynolds, Zachary Elsea for Defendants and Appellants.

        Meister Seelig & Fein, Alexander D. Pencu, Michael B. Sloan; Chassman and Mark B. Chassman for Plaintiff and Appellant.

An adverse ruling is not evidence of judicial bias. And lawyers may not accuse a judge of bias without evidence. We publish this opinion as a warning to those who appear before the appellate bench. Challenges to the integrity of the hard-working, dedicated trial judges of this state must be based on evidence in the record, not the personal frustrations of counsel or parties. Members of the bar may not spew allegations of judicial bias merely because they disagree with a ruling. Counsel must not expect courts of appeal to allow such baseless outbursts.

These contempt proceedings arise from appellate briefs filed by Attorney Jeremiah Reynolds on behalf of his clients, appellants Sergei Bespalov and Marina Bespalov.[1] In those briefs, counsel launched repeated attacks on the integrity of the trial judge, unsupported by any evidence. We are bound to protect the integrity of the courts. (*N.D. v. Superior Court* (2026) 117 Cal.App.5th 1292, 1296 (*N.D.*)) That duty compels us to issue sanctions here.

## THE BRIEFING

The first line of the opening brief reads: "This is an appeal about double standards." The brief explains that judgment was entered against the Bespalovs "due to the Respondent Court's manifold and prejudicial legal errors and unchecked bias." "This judgment," it says, "could not have been reached without . . . the Respondent Court's two thumbs firmly on the scale for [respondents]." The brief claims that "the outcome of this case was predetermined by the double standard employed by the Respondent Court." It further contends that "the Respondent Court abdicated [its] responsibility" when it credited the testimony of an opposing witness. It asserts "that the

---

[1]    We resolve the merits of the appeal in a separate, unpublished opinion.

2

Respondent Court was as biased *against* the Bespalovs as it was in favor of [respondent]." (Italics in original.) "The Court," it complains, "bent over backwards to assist [respondent] in glossing over the gaping and dispositive flaws with its case . . . and it relentlessly shut down the Bespalovs' ability to present effective defenses. The resulting $5.9 million Judgment was a travesty." This vitriol made the introduction memorable, in all the wrong ways.

The body of the brief continues to press the allegations of bias but offers no evidence to substantiate them. It deploys headings that refer to "Biased Trial Rulings" and say the trial court gave respondent "Carte Blanche to Introduce Whatever Evidence It Wanted." Yet nothing in the arguments beneath those headings explains how the court's rulings were biased, beyond the mere fact that counsel disagreed with them. In other sections, the brief accuses the court of showing "unending deference" to the respondent, abdicating its judicial responsibilities, and making "a mockery of due process." It concludes by again charging the court with employing an "unabashed double standard."

The reply brief maintains the drumbeat of insults. It says the trial court failed to accept "obvious propositions" and "helped [respondent] gloss over its fatal standing problem." It calls the court's final ruling "a runaway Statement of Final Decision." Finally, it treats the court's alleged bias as assumed, remarking snidely in response to an opposing argument: "it is manifestly unavailing to argue that . . . any error was harmless because the court was already biased against Mr. Bespalov anyway."

**ORDER TO SHOW CAUSE**

In our initial review of the briefs, we found 26 of these baseless accusations of bias. We issued an order to show cause so counsel might explain why he should not be held in contempt for attacking the integrity of the court in a court document (*In re Mahoney* (2021) 65 Cal.App.5th 376, 377) or sanctioned for making allegations of bias without support. We noted that the Bespalovs twice unsuccessfully sought to disqualify the trial judge in proceedings that terminated with the denial of a writ petition by the California Supreme Court. Counsel's response to our order to show cause, both in his written return and his oral presentation, lacked awareness of the nature and severity of his offenses.

I.   *Counsel's Return*

Counsel's written response demonstrates a failure to grasp the significance of the issue. It contains two parts. In the first, counsel acknowledges that these "rhetorical excesses" were unnecessary to his briefing and apologizes for "falling below the standards of professionalism." Nevertheless, he argues the statements we identified were "neither unsupported by the record nor made in reckless disregard of the truth."

In the second part, counsel continues to undercut his initial apology by asserting that the statements in the brief "were not presented as independent facts" but were instead "characterizations and inferences" drawn from the court's rulings. He suggests "reasonable minds may differ" as to whether these inferences were appropriate. While counsel declined to "defend the challenged rhetoric as necessary," he maintained that the briefs were "grounded in counsel's good-faith interpretation of documented record facts."

4

This is not sufficient as either defense, explanation, or apology. It implies that counsel inferred bias simply from an adverse ruling, and acted reasonably in doing so. But counsel may not infer bias simply from an adverse ruling. (*N.D., supra,* 117 Cal.App.5th at pp. 1296, 1300–1301.) Further, counsel's statement that his allegations of bias "were not presented as independent facts" rings hollow. Counsel put these allegations into multiple headings of an appellate brief. There is no reason to include such statements in a heading if they are not intended as statements of independent fact.

Counsel's declaration in support of his return gives the names and firms of the attorneys who previously represented his clients and sought disqualification of the trial judge. Counsel also specifically names his own former partner who "primarily drafted" the briefs. It is difficult to understand why it was necessary to list these other attorneys by name and firm, except as an effort to shift responsibility.[2]

Counsel's return attempts to distinguish this case from other cases in which contempt sanctions were imposed. He argues that, unlike counsel in *In re Mahoney*, he has not "doubled down" by refusing to apologize, his briefs were otherwise meritorious, and he did not accuse the trial judge of bowing to political influence. (*In re Mahoney, supra,* 65 Cal.App.5th at p. 379.) This

---

[2]    At oral argument, counsel explained that he thought this court was confused about which lawyers pursued disqualification of the trial judge by way of writ. Counsel misses the point. We do not fault the Bespalovs for exercising their right to seek the judge's disqualification. (*N.D., supra,* 117 Cal.App.5th at p. 1300.) But that issue was finally resolved against them. (See Code Civ. Proc. § 170.3, subd. (d) [determinations on disqualification are reviewable only by writ].) We were offering counsel a chance to explain why the issue of bias had resurfaced, despite that resolution. Counsel did not take that chance.

case is not meaningfully distinct from *In re Mahoney*. As explained above, counsel's apology was immediately qualified and tacitly retracted by his defense of his conduct as reasonable. He had no evidence to support his accusations. And we are not convinced that unfounded accusations of bias should be treated differently from unfounded claims that a judge bowed to political influence.

Counsel further argues that he neither displayed the pattern of abuse present in *In re Koven* (2005) 134 Cal.App.4th 262, nor failed to present evidence as did counsel in *N.D.* (*In re Koven, supra,* 134 Cal.App.4th at p. 265; *N.D., supra,* 117 Cal.App.5th at p. 1300.) We are not persuaded. Counsel *did* fail to present evidence to support his accusations of bias, and in that respect this case *is* akin to *N.D.* (*N.D., supra,* 117 Cal.App.5th at p. 1300.) The sole support counsel offered for the accusations, in that case as in this, was the fact that the trial court ruled against them. (*Id.* at pp. 1299– 1300.) Further, while *In re Koven* holds a pattern of abuse may be an "aggravating factor," nothing in that opinion suggests such a pattern is a prerequisite to a contempt finding. (*In re Koven, supra,* 134 Cal.App.4th at p. 265.) And though the aggravating factor of *In re Koven* is absent here, so is the mitigating factor of a complete and unreserved apology. (*Id.* at pp. 264– 265, 274.). Case law supports the imposition of sanctions.

II.    *Oral Argument*

At oral argument counsel offered apologies multiple times, yet he still did not seem to understand exactly what he was apologizing for. Counsel appeared more concerned about the consequences of the contempt proceeding than the unfounded accusations that led to it. He expressed regret about how

distracting his argument had been,[3] but was reluctant to squarely confront the fact that he impugned the trial court's integrity without evidence. When faced with the direct question of whether any evidence supported his assertion of bias, and where in the record that evidence might be, counsel first avoided the question, then offered a heavily qualified answer. Only after the question was posed for a third time did counsel answer directly, admitting there was no evidence in the record to support his claims of bias.

Two comments made by counsel during this discussion are particularly troubling. First, he said he "made arguments based upon my interpretation of the court's rulings." When asked to explain what he meant by that, counsel said he "looked at the cumulative effect of all of these rulings that went against us at trial . . . and my interpretation of that was that there was bias by the trial court." The implication in the return that unfavorable rulings mean a biased court thus became an explicit assertion.

Counsel are obviously free to disagree with a ruling, and they are *encouraged* to explain in an appellate brief, with vim and vigor, why that ruling is wrong. (*In re Mahoney, supra,* 65 Cal.App.5th at p. 380.) But counsel must not assume an unfavorable ruling means a biased court, much less make that assumption a central part of their appeal.

Second, counsel said "I'm only defending [the charges of bias] because I'm here defending myself on a contempt proceeding." Counsel was not obliged to compound his error by asserting a meritless defense. As counsel admitted, there was no evidence in the record to support his claims. When

---

[3]      It is certainly true that unfounded charges of bias are distracting, and that fact should serve as a practical deterrent. (See *WasteXperts, Inc. v. Arakelian Enterprises, Inc.* (2024) 103 Cal.App.5th 652, 666–667.) But distraction is not the sole, or even the primary, reason such claims should be avoided. (See *People v. Ramirez* (2024) 104 Cal.App.5th 315, 319 (*Ramirez*).)

conduct cannot be defended, a simple and straightforward apology still carries great weight. (*In re Buckley* (1973) 10 Cal.3d 237, 257 & fn.26.) It may not always be sufficient to avert sanctions (*In re Koven, supra,* 134 Cal.App.4th at pp. 274–275), but it will go far when not immediately clawed back by arguments about why the behavior was reasonable.

## SANCTIONS

Attorneys have a duty to maintain the respect due to the courts of justice and judicial officers. (Bus. & Prof. Code § 6068, subd. (b).) By signing papers presented to the court, attorneys certify that the claims contained therein have evidentiary support. (Code of Civil Procedure § 128.7, subd. (b)(3).) Attorneys are officers of the court, sworn to conduct themselves "at all times with dignity, courtesy, and integrity." (Cal. Rules of Court, rule 9.7.) Using appellate briefing to launch unfounded accusations of bias against a trial judge violates those duties and constitutes contempt of this court as well as the trial court. (*Ramirez, supra,* 104 Cal.App.5th at p. 319; *In re S.C.* (2006) 138 Cal.App.4th 396, 422.)

Contempt of court is a violation under Code of Civil Procedure section 1209, punishable by fine. (Code of Civil Procedure § 1218; *In re Mahoney, supra,* 65 Cal.App.5th at p. 381.) We find counsel in direct contempt for employing an unsupported heading to assert that "The Respondent Court's Biased Trial Rulings Violated the Bespalov's Due Process Rights." We order him to pay a fine of $1,000 for this offense. We need not further discuss the other 25 offending statements, although they are equally reprehensible.

We impose this fine because counsel repeatedly and baselessly impugned the integrity of the trial court and offered meritless defenses for his conduct in response to our order to show cause. This opinion constitutes a written statement of our reasons for imposing sanctions. (*N.D., supra,* 117

8

Cal.App.5th at p. 1302.)  The fine shall be payable to the clerk of this court within 60 days of the date this decision becomes final.

## DISPOSITION

Attorney Jeremiah Reynolds is ordered to pay the clerk of this court the amount of $1,000 within 60 days.  The clerk is to deposit that money in the general fund.  Reynolds and the clerk of this court are each ordered to forward a copy of this opinion to the State Bar within 30 days.  (Bus. & Prof. Code, §§ 6086.7, subd. (a)(3), 6068, subd. (o)(3).)

## CERTIFIED FOR PUBLICATION

ZUKIN, P. J.

We concur:

MORI, J.

TAMZARIAN, J.

9